# EXHIBIT A



# CITY OF NEW HAVEN
*Toni N. Harp, Mayor*

## BUILDING DEPARTMENT
*200 Orange Street, 5th Floor*
*New Haven, CT 06510*
Phone: (203) 946-8045 Fax: (203) 946-8049
www.cityofnewhaven.com



*Daniel P. O'Neill*
*Acting Building Official/*
*Deputy Building Inspector*

*Matthew Nemerson*
*Economic Development*
*Administrator*

March 24, 2014

CERTIFIED MAIL
<u>RETURN RECEIPT REQUESTED</u> – 7003 1010 0004 4792 3580 <u>AND</u> FIRST CLASS MAIL

Michael Lotto
9 North Bank Street
New Haven, CT 06511

    Re:    9 North Bank Street
           Termination of Building Permit # BP-2003-1041

Dear Mr. Lotto:

    Building Permit # BP-2003-1041 was issued on September 3, 2003 to construct a ***3-story rear addition to an existing single family residence*** at the above referenced premises. A previous inspection on August 15, 2007 revealed framing only without mechanicals installed. Also, to date there have not been any other inspections or permits issued to complete this addition.

    An inspection by Assistant Building Inspector Robert Walsh on March 24, 2014 revealed that work has been suspended or abandoned for a period of six (6) months or more.

    Due to the lack of progress for approximately 6 years, you are hereby informed under Section 111.3 of the 1999 Connecticut State Building Code as amended that this permit has been voided and any further work or occupancy of this space shall require the issuance of a new permit.

    If you would like to discuss the project status, please contact Assistant Building Inspector Robert Walsh at 203-946-6125.

                    Very truly yours,

                    Daniel P. O'Neill
                    Acting Building Official/
                    Deputy Building Inspector

cc:    Faustino Lopez, Acting Fire Marshal
       Frank D'Amore, Deputy Director, LCI
       Alder Anna Festa

NEW HAVEN MAKE IT HAPPEN HERE
InfoNewHaven.com

# EXHIBIT B

VOL 9186 PG 221
08/25/2014  10:02:51 AM
2 Pages
ORDER
Michael B. Smart City Clerk
Instr # 2014-07961

# CITY OF NEW

*Toni N. Harp,*

## BUILDING DEPA

*200 Orange Street, 5th Floor*
*New Haven, CT 06510*
*Phone: (203) 946-8045 Fax: (203) 946-8049*
www.cityofnewhaven.com

*Daniel P. O'Neill*
*Acting Building Official/*
*Deputy Building Inspector*

*Matthew Nemerson*
*Economic Development*
*Administrator*

August 20, 2014

## HAND DELIVERED BY CONNECTICUT STATE MARSHAL

Michael Lotto
9 North Bank Street
New Haven, CT 06511

Re: Work Done Without Permit at 9 North Bank Street

Mr. Lotto:

## CONNECTICUT STATE BUILDING CODE
## WORK DONE WITHOUT A BUILDING PERMIT
## 9 North Bank Street

An inspection of the above referenced property by myself, Building Plans Examiner Robert Walsh, and Assistant Building Inspector James Turcio on August 8, 2014, revealed that *an air conditioner has been installed on the 3rd floor and lights installed on the outside of the addition.* Since there is no electrical permit on file, this constitutes work without the proper permits as required by Sec. R105.1 of the 2009 IRC portion of the Connecticut State Building Code.

Section 105.1 of the 2005 State Building Code of the State of Connecticut states, "Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the building official and obtain the required permit".

**You are hereby ordered to obtain the required permit within ten (10) days from receipt of this letter.**

Be advised that the Building Official is authorized to prosecute any violation of this order by requesting that legal counsel of the jurisdiction, or the Office of the State's Attorney, institute the appropriate proceeding at law. Per Connecticut General Statutes §29-254a and §29-394, and State Building Code §113.3, any person who is convicted in a court of law of violating any provision of the State Building Code or for failure to comply with the written order of a building inspector for the provision of additional exit facilities in a building, the repair or alteration of a building or the removal of a building or any portion thereof shall be fined not less than two hundred not more than one thousand dollars or imprisoned not more than six months or both.

**NEW HAVEN** MAKE IT HAPPEN HERE
InfoNewHaven.com

Work Done Without a Building Permit
9 North Bank Street
Page 2

This office hopes to gain your cooperation and looks forward to working with you in the interest of building and life safety for a timely resolution of this serious matter. If you have any questions, please feel free to contact me at (203) 946-8045.

**This notice will be placed on the Land Records in the City Clerk's Office, and will not be removed until compliance is complete to the satisfaction of this office.**

Very truly yours,

Daniel P. O'Neill
Acting Building Official/
Deputy Building Inspector


cc:     Faustino Lopez, Acting New Haven Fire Marshal
        Thomas Talbot, Deputy Director, Zoning
        Alex Pullen, Acting City Assessor
        Maurine Villani, City Tax Collector
        Alder Anna Festa
        City/Town Clerk

08/25/2014  10:02:51 AM
Michael B. Smart City Clerk
City of New Haven

# EXHIBIT C



# CITY OF NEW HAVEN
*Toni N. Harp, Mayor*

## BUILDING DEPARTMENT
*200 Orange Street, 5th Floor*
*New Haven, CT 06510*
*Phone: (203) 946-8045  Fax: (203) 946-8049*
www.cityofnewhaven.com



CITY OF NEW HAVEN
AN ECONOMIC DEVELOPMENT DEPT.

*Matthew Nemerson*
*Economic Development*
*Administrator*

*James Turcio*
*Building Official*

February 23, 2015



Receipt # 77414

Instr # 2015-01689

**VOL 9252 PG 58**
03/02/2015  10:26:36 AM
4 Pages
ORDER

Michael B. Smart City Clerk

CERTIFIED MAIL
RETURN RECEIPT REQUESTED  7003 1010 1010 4972 3412 <u>AND</u> FIRST CLASS MAIL

Michael Lotto
9 North Bank Street
New Haven, CT 06511

   Re: Work Done Without Permit at 9 North Bank Street

Mr. Lotto:

## CONNECTICUT STATE BUILDING CODE
## WORK DONE WITHOUT A BUILDING PERMIT
## <u>9 North Bank Street</u>

An inspection of the above referenced property was conducted by this office on January 15, 2015 to determine compliance with the Connecticut State Building Code. Present were then, Acting Building Official/Deputy Building Inspector Daniel O'Neill, Building Plans Examiner Robert Walsh, Assistant Plumbing & Heating Inspector Ramon Velez, Electrical Inspector Shawn Reed, Assistant Corporation Counsel Audrey Kramer, Michael Lotto and Michael Habib (Owner's Attorney).

Building Permit BP-2003-1041 was issued to construct a rear addition. A notice dated March 24, 2014 was sent to you voiding the above noted permit for lack of work for more than six (6) months with no calls for any required inspections.

<u>The following Building Code violations were noted:</u>

1. 2009 International Residential Code (IRC) Section R105.1, "Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the building official and obtain the required permit."

  There are no permits on file for any plumbing, mechanical or electrical work, even though the new addition has been wired, piped and a heating system has been installed.

NEW HAVEN
InfoNewHaven.com

BK: 9252 PG: 58

Work Done Without a Building Permit
9 North Bank Street
Page 2

1. *(cont.)* Additionally, since Building Permit BP-2003-1041 has been voided and the last noted inspection that was approved was a footing inspection by Assistant Building Inspector Robert Walsh on April 16, 2004, a new building permit is required to proceed.

2. Section R109.1 requires, "...the *permit* holder or his agent, shall make or cause to be made any necessary inspections...".

3. Section R109.1.2 requires, "Rough inspection of [all] plumbing, mechanical, gas and electrical systems shall be made prior to covering or concealment...".

4. Section R109.1.4 requires framing to be inspected before covering.

Much of the addition has been insulated and covered with gypsum board without calling for the above noted inspections.

Additionally, Framing:
From what was visible, it appears that the existing framing does not comply with Chapters 5, 6, and 8 of the 2009 IRC portion of the Connecticut State Building Code. Beams appear to be undersized, the load path could not be confirmed as continuous from ridge to foundation. Joists appear to exceed allowable spans. Removal of wall and ceiling covering will be required to further investigate the above noted issues. From the framing that was visible, it was noted that joist hangers were not properly nailed. Also, the ceiling joists in the basement were notched at the foundation was and are now undersized at this location. There was actually signs of cracking in the joists at this location.

Section R302.6 as amended requires not less than ⅝" Type X gypsum board or equivalent on the garage side of the wall separation, to the garage from the main structure. Openings must comply as listed. It was observed that a dog portal was installed. This does not comply with Section R302.6.

Additionally, the following Electrical Code violations were noted:

1. There are no outlets located outside the rear of the house. NEC 210.52(E)

2. Wires were found that were spliced together without a junction box. NEC 300.15

3. Non-metallic cables wrapped around plumbing pipes. NEC 300.12

4. Across the entire addition there are cables without the proper supports. NEC 334.30

5. There were no smoke detectors in the new bedrooms. IRC R314.3

6. No carbon monoxide detector outside of bedroom. IRC R315.1

7. A large room on the second floor did not contain any wall outlets. NEC 210.52(A)(1)

8. No GFI outlet for bathroom. NEC 210.52(D)

9. Wires too close to the edge of studs. NEC 300.4(D)

10. No nail plate to protect the cables. NEC 300.4(A)(1)

11. No counter top outlets for kitchen area on third floor. NEC 210.8(A)(6)

12. No means of disconnect for new dishwasher or garbage disposal on third floor. NEC 422.16(8)(2)

NEW HAVEN
InfoNewHaven.com

Work Done Without a Building Permit
9 North Bank Street
Page 3

Considering the size of the new addition, a load calculation is required according to NEC Article 220. The new loads added to the existing service may require it to be upgraded.

Additionally, the following Plumbing and Heating Code violations were noted:

**Plumbing**

1. A detailed drawing/sketch showing all bedroom, bathrooms, kitchen dimensions and gas appliance locations on every level is needed in order to apply for a permit. 2009 IRC Sec. R106.1

2. A load calculation for the gas line size from the meter to the furthest point and all appliances served. (This can be shown on the drawing/sketch.) All piping must be air pressure tested before use. 2009 IRC Sec. 02412.8

3. All incorrect drainage and vent piping must be corrected and re-installed per code. Sections P-3004.1; P-3005.4; P-2603.2; and P-3101.2.1

4. All DWV piping needs to be exposed and either water, air or a running test performed from the roof vent termination. 2009 IRC Sec. P2503.2 and Sec. P2503.51

5. Sewage leak from 4" clean out in basement indicates no sealant on plug. (Check all and clean out plugs). P-3003.1

6. Numerous fixture traps throughout addition incorrectly piped and vented. P-3201.3 and P-3201.5

7. Potable main to addition cannot have low points per code. P-2902.1

8. Gas valves inside wall cavities are not allowed. 2009 IRC 02420.1.2 and 02420.1.3

9. All washing machine traps and standpipes need to be 2". P-3201.7

10. Washing machine emergency pan drains cannot be tied into sanitary without an approved trap, vent and trap primer or seal. P-3001.1; P-3201.2; and P-3101.2

**Other Code Violations**
2009 IRC Sec. P2603.2.1 Protection against physical damage
2009 IRC Sec. P3003.14.2 Solvent Cementing - Not all fittings properly joined

**Heating**

1. A complete heat loss of addition showing total BTU requirement for the new addition, for all zones, and each room stipulating the correct amount of linear heating required for the type of heat (radiant) being used. 2009 IRC Sec. M1401.3 Sizing

2. Indicate what appliance will be used for the additional zones. If main house boiler will be used a whole house heat loss will be needed to ensure existing boiler can carry the additional BTU load.

NEW HAVEN
InfoNewHaven.com

Work Done Without a Building Permit
9 North Bank Street
Page 4

The first step in the process to bring this project into compliance and completion would be to submit revised plans including framing, electrical, plumbing, and heating plans to this office. These plans should be accompanied by the appropriate permit applications and all electrical load and heat loss calculations as noted previously. The applicant will be directed to bring the building permit application to the Zoning Administrator for an administrative zoning approval and sign off. Once the plans are reviewed and approved with zoning sign off, the Department would then issue the appropriate permits.

The next step would be for the applicant to remove most/all wall and ceiling covering and insulation so as to facilitate a more complete inspection. We would then generate an inspection report based upon this inspection, issue the appropriate correction notices (if necessary) and then proceed as is customary with the ultimate goal of a safe and code compliant structure.

**You are hereby ordered within fifteen (15) days of receipt of this letter to proceed as noted above and apply for all required permits as well as call for all required inspections.** Failure to do so shall subject you to the penalties as noted in Section R113 of the 2009 IRC portion of the Connecticut State Building Code.

This office hopes to gain your cooperation and looks forward to working with you in the interest of building and life safety for a timely resolution of this serious matter. If you have any questions, please feel free to contact me at (203) 946-8045.

**This notice will be placed on the Land Records in the City Clerk's Office, and will not be removed until compliance is complete to the satisfaction of this office.**

Very truly yours,

James Turcio
Building Official

cc:   Audrey Kramer, Corporation Counsel
      Honorable John A. Keyes, New Haven Probate Court
      *Owner's Attorney:* Michael Habib, P.O. Box 261392, Hartford, CT 06126-1392
      Robert Doyle, Acting New Haven Fire Marshal
      Thomas Talbot, Deputy Director, Zoning
      Alex Pullen, Acting City Assessor
      Maurine Villani, City Tax Collector
      Alder Anna Festa
      City/Town Clerk
      *North Bank Street Residents:*
         Keith MacDowall, 7 North Bank Street
         Corey Rossman, 15 North Bank Street

03/02/2015  10:26:36 AM
Michael B. Smart City Clerk
City of New Haven

BK: 9252  PG: 61

# EXHIBIT D

Document# 00000366
Volume: 8782 Page: 113

After Recording Return To:
**JPMORGAN CHASE BANK, N.A.**
**CHASE RECORDS CENTER**
**RE: COLLATERAL TRAILING**
**DOCUMENTS**
**PO BOX 8000**
**MONROE, LA 71203**

———————————— [Space Above This Line For Recording Data] ————————————

# HOME AFFORDABLE MODIFICATION AGREEMENT

Loan Number _0____5741_

Borrower ("I"):[1] **MICHAEL LOTTO**
Lender or Servicer ("Lender"): **JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **JUNE 12, 2003**
Loan Number: _____5741_
Property Address ("Property"): **9 N BANK ST, NEW HAVEN, CONNECTICUT 06511**

**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND IMPROVEMENTS THEREON SITUATED IN THE TOWN OF NEW HAVEN, COUNTY OF NEW HAVEN AND STATE OF CONNECTICUT AND KNOWN AS NO. 9-11 NORTH BANK STREET, BOUNDED: SOUTHERLY: BY NORTH BANK STREET 40 FEET; WESTERLY: BY LAND NOW OR FORMERLY OF JOSEPH LAWRENCE, 125 FEET, MORE OR LESS; NORTHERLY: BY LAND NOW OR FORMERLY OF JAMES H. WOODHOUSE, 40 FEET; EASTERLY: BY LAND NOW OR FORMERLY OF JOHN PYRDOL, 125 FEET, MORE OR LESS. APN: 196-466-900**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED JUNE 23, 2003 BOOK 6460 PAGE 148**
**Tax Parcel No: 196046600900**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 11_08_2011_11_01_14   Form 3167  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 1 of 10 pages)

Document: 00000366
Volume: 8782 Page: 114

Loan Number  5741

"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a trial period plan.

    H.  If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 11 08 2011 11 01 14   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
*(page 2 of 10 pages)*

Document# 00000366
Volume: 8782 Page: 115

Loan Number ▆▆▆741

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **DECEMBER 01, 2011** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **DECEMBER 01, 2011.**

A.   The Maturity Date will be: **NOVEMBER 01, 2051.**

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$291,621.51** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   **$53,600.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$238,021.51.** Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **NOVEMBER 01, 2011** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **DECEMBER 01, 2011.** My payment schedule for the modified Loan is as follows:

Document≠ 00000366
Volume: 8782 Page: 116

Loan Number ███ 5741

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|-------|--------------|---------------------------|----------------------------------------------|-------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 11/01/2011 | $720.79 | $1,217.42 May adjust periodically | $1,938.21 May adjust periodically | 12/01/2011 | 60 |
| 6 | 3.000% | 11/01/2016 | $837.39 | May adjust periodically | May adjust periodically | 12/01/2016 | 12 |
| 7 | 4.000% | 11/01/2017 | $960.47 | May adjust periodically | May adjust periodically | 12/01/2017 | 12 |
| 8-40 | 4.125% | 11/01/2018 | $976.11 | May adjust periodically | May adjust periodically | 12/01/2018 | 396 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interes that will be due will be the rate set forth in Section 3.C. ▬

F.   I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 11 08 2011 11 01 14    Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
                                                                                                                    (page 4 of 10 pages)

Document # 00000366
Volume: 8782 Page: 117

**Loan Number** ████6741

the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Intentionally Deleted.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

Document # 00000366
Volume: 8782 Page: 118

**Loan Number** ███741

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or

Document# 00000366
Volume: 8782 Page: 119

Loan Number ▮▮▮▮5741

subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Document# 00000366
Volume: 8782 Page: 120

Loan Number ▮▮▮5741

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And MICHAEL LOTTO, LOAN NUMBER ▮▮▮5741 WITH A MODIFICATION EFFECTIVE DATE OF December 01, 2011

In Witness Whereof, the Borrower(s) have executed this agreement.

Date: 12, 2, 11

Borrower - **MICHAEL LOTTO**

Witness - Caroline Canteen
(signature & printed name required)

Witness - Giuliana Gioiosa
(signature & printed name required)

State of **CONNECTICUT**
County of ___New Haven___

The foregoing instrument was acknowledged before me this 2nd day of ___December___, 2011 by **MICHAEL LOTTO**.

[SEAL]

(Signature of person taking acknowledgment)

Notary Public
(Title or rank)

(Serial number, if any)

My Commission Expires

O'DETTE EDGEWORTH
NOTARY PUBLIC OF CONNECTICUT
My Commission Expires 10/31/2016

---

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 11 08 2011 11 01 14   Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
*(page 8 of 10 pages)*

Document # 00000366
Volume: 8782 Page: 121

Loan Number ███5741

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And MICHAEL LOTTO, LOAN NUMBER 628885741 WITH A MODIFICATION EFFECTIVE DATE OF December 01, 2011

In Witness Whereof, the Lender has executed this Agreement.

Lender

### JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA

By: _____

Date: _____ 12-16-11 _____

Claudia Gamboa
Vice President

_____   Siavon Moore
Witness for Lender -

_____   Monica Miranda
Witness for Lender -

State of COLORADO
County of DENVER

The foregoing instrument was acknowledged before me this _16th_ day of _Dec_ , _2011_ by _Claudia Gamboa_ , Vice President of JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, a national banking association.

[SEAL]
ANN JENETTE KEYS
NOTARY PUBLIC
STATE OF COLORADO
MY COMMISSION EXPIRES 2-18-2015

_____
(signature of person taking acknowledgment)

_Notary_
(title or rank)

_____
(serial number, if any)

My Commission expires: _____

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 11 08 2011 11 01 14   Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)**
*(page 9 of 10 pages)*

Document# 00000366
Volume: 8782 Page: 122

Loan Number ███5741

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac   UNIFORM INSTRUMENT    ver. 11 08 2011 11 01 14    Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
*(page 10 of 10 pages)*

CITY OF NEW HAVEN
CITY CLERK
RONALD SMITH
Jan 12,2012 10:32A

# EXHIBIT E



# CHASE

| | |
|---|---|
| | 1-800-XXX-9380 |
| Monday - Thursday | 8 a.m. - midnight (ET) |
| Friday | 8 a.m. - 10 p.m. (ET) |
| Saturday | 8 a.m. - 5 p.m. (ET) |
| Deaf or Hard of Hearing (TTY) | 1-800-582-0542 |

chase.com

ılıllıllı·ıllıllılllıılllllılllılllıllılllllılılıl

96987 MWD Z 10615 C - BRE
MICHAEL LOTTO
9 N BANK ST
NEW HAVEN CT 06511-2519

## Mortgage Loan Statement

| | |
|---|---|
| Loan Number | XXXX5741 |
| Statement Date | 04/16/2015 |
| Property Address | 9 N Bank St |
| | New Haven, CT 06511 |
| **Total Amount Due** | **$19,940.85** |
| **Payment Due Date** | **05/01/2015** |

A late charge of $36.04 may apply if received after 05/16/2015.

## Loan Overview (as of 04/16/2015)

| | |
|---|---|
| Original Principal Balance | $319,964.00 |
| Unpaid Principal Balance | $220,792.47 |
| Deferred Principal Balance | $53,600.00 |
| Escrow Balance | ($9,252.50) |
| Corporate Advance Balance | $833.00 |

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $358.13 |
| Interest | $362.66 |
| Escrow Payment (Taxes and/or Insurance) | $1,276.62 |
| **Monthly Payment** | **$1,997.41** |
| **Prior Fees/Charges** | **$180.20** |
| Fees/Charges Since Last Statement | $0.00 |
| **Original Missed Payment Date** | **08/01/2014** |
| **Past Due Amount** | **$17,763.24** |
| **Total Amount Due** | **$19,940.85** |

## Adjustable-Rate Mortgage Information

| | |
|---|---|
| Interest Rate (Until 12/2016) | 2.00000% |
| For Payment Due | 08/01/2014 |

## Transaction Activity Since Your Last Statement (Includes Fees/Charges)

| Transaction Date | Description | Total Received | Principal | Interest | Escrow | Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|
| 03/26/2015 | FCL FEES & COSTS | | | | | $14.00 | |

## Important Messages

The Corporate Advance Balance can include expenses for inspections, home valuations, legal fees, property maintenance and other costs. It is listed under the Loan Overview section.

**Servicemember Protections:** You may be entitled to certain legal rights and protections if you or any owner or occupant of your home are or recently were on active duty or active service as a federal or state Military Servicemember, or if you're a dependent of such a Servicemember. For more information, please call us at 1-877-469-0110, 1-318-340-3308 if you're calling from overseas, or 1-800-582-0542 for TTY services.

If you receive or expect to receive an insurance claim check for damages to your home, you can visit chase.com/insuranceClaim for information about our claim process. If you have any questions, please call us at 1-866-742-1461 Monday through Friday from 8 a.m. to midnight and Saturday from 8 a.m. to 8 p.m. Eastern Time.



57413 313000 00199741 00203345 01994085 00005



□ Check box if address change is documented on the back.

MICHAEL LOTTO

| | |
|---|---|
| Loan Number | XXXX5741 |
| Total Amount Due | $19,940.85 |
| Payment Due Date | 05/01/2015 |

Please tell us how you want us to apply your funds. Make your check or money order payable to Chase and write your loan number on it. Please do not send post-dated checks or cash.

| | |
|---|---|
| Monthly Payment ($1,997.41) | $ |
| Late Charges ($180.20) | $ |
| Fees Due ($0.00) | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Total Amount Enclosed | $ |

A late charge of $36.04 may apply if received after 05/16/2015.

ılılıllılıllllıllllılılllılıllılllıllıllllılıllıllıllllıllılıl
CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

⑆50000 50 26⑆ XXXX 574 ⑈

# EXHIBIT F



# selene



**For Return Service Only**
P.O. Box 8619
Philadelphia, PA 19101-8619

000064521174
MICHAEL J HABIB
Wilcutts and Habib LLC
100 PEARLS ST. FL. 14
HARTFORD CT 06103

## MORTGAGE STATEMENT

**Statement Date: September 07, 2024**

**Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours of Operation:**
Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
Fax: (866) 926-5496

**Payments:**
PO Box 660369
Dallas, TX 75266-0369

**Correspondence:**
P.O. Box 8619
Philadelphia, PA 19101-8619

| Loan Number: | ███3247 |
|---|---|
| Payment Date: | 10/01/2024 |
| **Payment Amount:** | **$5,367.88** |

MICHAEL J HABIB
Wilcutts and Habib LLC
Property Address:
9 N BANK ST
NEW HAVEN, CT 06511

## Account Information

| | |
|---|---|
| Outstanding Principal Balance* | $272,363.17 |
| Deferred Balance | $0.00 |
| Escrow Balance | -$110,538.05 |
| Interest Rate | 2.000% |
| Prepayment Penalty | No |

*This is the principal balance only, not the amount required to pay your account in full.

## Explanation of Post-Petition Payment

| | |
|---|---|
| Principal | $452.64 |
| Interest | $402.13 |
| Escrow (Taxes and Insurance) | $1,829.17 |
| Additional Monthly Amount | $0.00 |
| **Regular Monthly Payment** | **$2,683.94** |
| Total Fees and Other Charges | $0.00 |
| Past Unpaid Amount | $2,683.94 |
| **Total Payment Amount** | **$5,367.88** |
| Unapplied Funds | $0.00 |

The payment amount does not include any amount that was past due at the time you filed bankruptcy. If post-petition fees are displayed on this statement, such fees may not all be recoverable. Any advances, fees or costs listed on the statement will be recoverable only if any required notices are filed with the bankruptcy court or the bankruptcy court otherwise enters an order allowing those amounts.

## Transaction Activity (08/08/24 - 09/07/24)      *** HISTORY CONTINUED ON PAGE 2 ***

| Date Paid | Description | Principal | Interest | Escrow | Additional Monthly Amount | Late Fees/Other Charges | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 08/08/24 | HOMEOWNERS INSURANCE | $0.00 | $0.00 | -$420.30 | $0.00 | $0.00 | $0.00 | -$420.30 |
| 08/08/24 | ESCROW ADVANCE | $0.00 | $0.00 | $420.30 | $0.00 | $0.00 | $0.00 | $420.30 |
| 08/19/24 | PROP INSPECTION | $0.00 | $0.00 | $0.00 | $0.00 | -$30.00 | $0.00 | -$30.00 |

## Bankruptcy Messages

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you. If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Tax and Insurance) | $0.00 | $0.00 |
| Other Monthly Amount | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)** | $0.00 | $0.00 |
| **Total Payment** | **$0.00** | **$0.00** |

## Important Messages

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or the Trustee if you have questions. **Partial Payments:** Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

**If you are experiencing financial difficulty:** See back for information about mortgage counseling assistance.

## Summary Of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Since Last Statement | $0.00 |
| Total Paid During Bankruptcy | $0.00 |
| Current Balance | $191,687.73 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment. **Please note that if the plan has not been confirmed or the proof of claim deadline has not passed, this amount has not been finalized. Please contact your attorney or the trustee if you have questions.**

For informational purposes only.

Payment Amount

If you are sending us a payment, make your check